UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHIGAN ATTORNEY GENERAL,<br><br>Plaintiff,<br><br>v.<br><br>EVERNORTH HEALTH, INC., et al.,<br><br>Defendants. | Case No. 24-13185<br>Honorable Shalina D. Kumar<br>Magistrate Judge Kimberly G. Altman |

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND (ECF NO. 13)**

## I.    Introduction

The State of Michigan (the "State") filed this action against defendants[1] in the Third Circuit Court for the County of Wayne, Michigan for their alleged role in proliferating the opioid crisis in Michigan. Express

---

[1] Plaintiff names Express Scripts, Inc., Express Scripts Administrators, LLC, Medco Health Solutions, Inc., ESI Mail Order Processing, Inc., ESI Mail Pharmacy Service, Inc., Express Scripts Pharmacy, Inc., Evernorth Health, Inc. (formerly Express Scripts Holding Company), Express Scripts Specialty Distribution Services, Inc. (collectively, "Express Scripts") and UnitedHealth Group, Inc., Optum, Inc., and OptumInsight, Inc. (collectively, "Optum") as defendants in this case. ECF No. 1-2, PageID.80. Express Scripts and Optum will be referred to collectively as the "Defendants."

Scripts and Optum removed the case based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). ECF No. 1. The State moves to remand this action asserting no basis for removal exists because "[d]efendants were not performing actions on behalf of the federal government, there is no federal defense, and there is no causal connection between [d]efendants' conduct and federal authority." ECF No. 13, PageID.666. The motion is fully briefed[2], and the Court heard oral argument on July 30, 2025. For the following reasons, the Court denies the motion.

## II.    Factual Background

Express Scripts and Optum are Pharmacy Benefit Managers ("PBMs") that negotiate with drug companies to provide prescription drug coverage to private clients as well as to plan sponsors that contract with the Office of Personnel Management ("OPM") under the Federal Employees Health Benefits Act ("FEHBA") to provide health insurance to federal employees. Express Scripts also provides PBM services to the U.S. Department of Defense ("DoD") as part of its TRICARE health insurance program to active duty and retired service members, and their spouses and children.

---

[2] ECF Nos. 16, 20, 22, 23, 25, 26, 31, 34, 35, 40, 42, 43, 43, 46, 48.

The State alleges that the Defendants colluded with opioid manufacturers to increase opioid prescriptions and sales in exchange for rebates and fees, and assisted manufacturers to deceptively market opioids to facilitate their oversupply. *See generally* ECF No. 1-2. As part of the services they provide to their clients, PBMs create standard, national formularies and utilization management ("UM") rules. Formularies are lists of drugs covered by a particular pharmacy benefit plan. These formularies are "often constructed in tiers, where drugs listed on higher tiers require larger copays, or as so called exclusionary formularies, where preferred brand drugs are included and nonpreferred drugs are not included." *Id.* ¶ 121. Typically, drugs subjected to disfavored UM rules are more difficult and costly to obtain, therefore reducing inappropriate prescribing. ¶ 123. However, the inverse is also true: favorable formulary placement and a lack of UM restrictions can result in medications being frequently prescribed and dispensed. *Id.*

The State alleges that the ability to create these formularies and UM programs allows PBMs to significantly influence the quantity, dose strength, duration, and refill availability for prescriptions that are dispensed in the United States and Michigan. ¶ 125. Additionally, PBMs also contract with

drug manufacturers to provide access to their products and increase sales, and they are paid by pharmacies when a plan's beneficiary fills those prescriptions. ¶ 127.

These formularies also affect how much a patient pays for a drug. Drugs included on formularies are at an increased demand because they are subject to lower copays. Due to the increased demand, drug manufacturers sell more of their products and are incentivized to get their products included on the formularies. Because of this, PBMs can leverage higher rebates paid to them by opioid manufacturers. ¶ 134.

The State brings this action under Michigan law for public nuisance, violations of the Drug Dealer Liability Act, and negligence. ECF No. 1-2. The State asserts that remand is appropriate because it has expressly disclaimed any federal claims in its complaint, and "included express disclaimers of liability arising out of the conduct undertaken at the direction of any federal officer." ECF No. 13, PageID.668. The Defendants argue that removal was proper because of Express Scripts' work "at the behest of the DoD for TRICARE…" which they contend satisfies the "acting under" requirement of the statue, and the State's disclaimers are insufficient to defeat removal. ECF No. 16, PageID.736, 740-42. They likewise argue that

removal was proper because Express Scripts acts as a federal officer by providing services for federal employees under FEHBA. *Id.* at PageID.742-43. Finally, Defendants contend that Optum "acted under" a federal officer by performing services for its federal clients, including the Veterans Health Administration ("VHA"). *Id.* at PageID.744-45.

## III.   Analysis

### A. Standard of Review

The federal officer removal statute provides that a civil action against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office," may be removed to federal district court. 28 U.S.C. § 1442(a)(1). Congress enacted this statute to provide a federal forum for a party to "assert federal immunity defenses" and the Supreme Court has instructed that the statute "must be liberally construed" to achieve this end. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147, 150 (2007).

For a private party to remove under the federal officer statute, they must satisfy a three-pronged test. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1085 (6th Cir. 2010). Private party defendants must show that: (1) they are

persons who acted under the direction of a federal officer; (2) the actions for which they are being sued were performed under color of federal office; and (3) there is a colorable federal defense to the plaintiff's claims. *Id*. A plaintiff may disclaim seeking certain kinds of liability to avoid federal jurisdiction. *Ohio ex rel. Yost v. Ascent Health Srvcs*. 165 F.4th 999, 1008 (6th Cir. 2026) (citing *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 407–08 (6th Cir. 2007). But courts "reject disclaimers that simply disavow any attempt to recover based on the defendant's indivisible federal conduct." *Id*.

### B. Discussion

The State argues that its complaint is not removable under the federal officer removal statute because Defendants cannot establish the three necessary prongs for federal officer removal and because its disclaimers negate any causal nexus between plaintiff's claims and Defendants' conduct on behalf of federal officers. The parties initially relied on opposing out-of-circuit authority, acknowledging that the Sixth Circuit had yet to weigh-in on the issue of whether cases against PMBs for harming consumers by manipulating the market for certain prescription drugs were removable by defendants under the federal officer statute. *See,*

*e.g.*, *California ex rel. Harrison v. Express Scripts, Inc.*, 154 F.4th 1069 (9th Cir. 2025) (remanding state's state law nuisance action against PBMs for their role in opioid crisis); *Westchester Cnty. v. Mylan Pharmaceuticals, Inc.*, 737 F. Supp. 3d 214 (S.D.N.Y. 2024), *appeal pending* (remanding cases to state court finding that post-removal disclaimers by government effective in severing causal nexus between plaintiffs' claims and removing defendants' conduct on behalf of government officers); *contra Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174 (1st Cir. 2024) (upholding removal of Puerto Rico's action against PBMs for their alleged unlawful scheme to inflate insulin prices*); West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C*, 140 F.4th 188 (4th Cir. 2025) (finding removal appropriate under federal officer statute in state's action against PBMs for alleged unlawful scheme to inflate insulin prices).

However, while this motion was pending, the Sixth Circuit addressed federal officer removal for PBM defendants in an action over inflated prescription prices. *See Yost*, 165 F.4th 999. Defendants argue that *Yost* is squarely on point and dictates a finding that the State's case was properly removed under the federal officer removal statute. The State counterargues

that *Yost*, a case alleging unlawful price inflation of prescription drugs, is distinguishable from the case at bar on the issue of disclaimer.

### 1. Federal Officer Removal Test

The State's supplemental brief addressing the *Yost* decision seems to concede that Defendants satisfy the three-pronged test for the federal officer removal statute to apply, absent an effective disclaimer. *See* ECF No. 48. In any event, the Court briefly addresses the prongs.

*Person acting under an officer of the United States*. "A person 'act[s] under' a federal officer when he makes 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Yost*, 165 F.4th at 1004 (quoting *Watson*, 551 U.S. at 152).  "Persons" include private firms under the statute. *Id*. (citing *Bennett*, 607 F.3d at 1085). The person or firm must have "a relationship to the federal superior characterized by subjection, guidance, or control." *Id*. (quoting *Watson*, 551 U.S. at 151) (internal marks omitted). "The relationship typically arises when a private contractor performs a task that the Government itself would otherwise have had to perform." *Id*. (quoting *Watson*, 551 U.S. at 154) (cleaned up).

As the Sixth Circuit explained in *Yost*, the "Federal Employee Health Benefits Act creates a 'comprehensive program of health insurance for

federal employees and assigns to OPM broad administrative and rulemaking authority over' that program." *Id*. at 1005 (quoting *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 91 (2017) (internal marks omitted). To fulfill its duties relative to providing prescription drug coverage to federal employees, OPM contracts with private carriers and authorizes them to subcontract with PBMs to provide coverage. *Id*. (citing 5 U.S.C. § 8902(a)).

OPM mandates many of the terms in those subcontracts, controlling the PBMs' conduct as a result. *Id*. For example: "it caps the amount that PBMs may charge carriers for their services;" it prohibits PBMs from charging carriers "based on industry benchmarks (which are higher)," instead tying "reimbursement to the PBM's acquisition cost plus a dispensing fee;" it requires "the PBMs to pass all 'negotiated discounts, rebates, credits, or other financial benefits on to the carrier;'" "it demands extensive disclosures of costs, profits, fees, negotiated rebates, and revenues;" it maintains "'the right to review and receive any information and/or documents the PBM'" provides the carriers; it audits PBMs; and it requires PBMs to meet "'minimum' OPM standards for 'member inquiry,

telephone customer service' and 'paper claims processing.'" *Id*. (citing FEHB Standard Contract 1.28(a), (c)).

*Yost* found that the PBMs operated under similar federal control in contracting and subcontracting for prescription drug coverage for the TRICARE program for active military service members. *See id*. Based on these contractual controls, the *Yost* court concluded that PBMs satisfy the statute's "acting under" prong when negotiating with drug manufacturers. *See id*.

The State does not challenge *Yost*'s findings that PBMs act under federal control when negotiating prescription drug coverage for federal employees, active military service members, and veterans, nor does it argue that those findings do not apply to Defendants here. *See* ECF No. 48. Accordingly, the Court finds that Defendants satisfy the "acting under" prong pursuant to *Yost*.

*For or relating to any act under federal office.* To remove an action under the federal officer removal statute, the actions for which the private actors are being sued must be "for, or related to, an act under color of federal office." *Id*. at 1009 (quoting 28 U.S.C. § 1442(a)(1). "[T]he statute requires only an association, connection, or tie between the challenged

conduct and the defendant's acts under color of federal office." *Id*. at 1010 (citations omitted). This requirement is not an onerous one*. In re Natl. Prescription Opiate Litig.*, 2023 WL 166006, at *5 (N.D. Ohio Jan. 12, 2023) (citing *Bennet*, 607 F.3d at 1088). "Under this factor, a defendant must demonstrate a "nexus, a causal connection between the charged conduct and [the] asserted official authority. In other words, the removing party must show it is being sued because of the acts it performed at the direction of a federal officer." *Id*.

*Yost* noted, as Defendants here argue, that PBMs maximize their leverage by deliberately conducting a single negotiation on behalf of all their clients. *Id*. The Defendants' alleged wrongful conduct here— influencing and controlling the prescribing and dispensing of opioids through its leverage in negotiations with drug manufacturers—has a straightforward "connection or association" with the work that the PBMs perform for the OPM, DoD, and VHA. Indeed, the State alleges that Defendants exerted their influence and control over the availability of opioids by negotiating with drug manufacturers for drug inclusion and placement in formularies (and no UM restrictions) in exchange for rebates and other fees. *See* ECF No. 1-2, PageID.128, 130 ¶ ¶ 184, 190. Yet these

are the very PBM activities the OPM, DoD, and VHA strictly regulate.

Accordingly, absent a valid disclaimer of any challenge to conduct related

to Defendants' work under or related to federal control, the Court finds a

sufficient causal nexus between Defendants' conduct under and related to

federal control and the State's challenged conduct generally for proper

removal under the federal officer statute.[3]

## 2. Disclaimer Doctrine

The crux of the removability of this case thus rests in the validity of

the State's disclaimers. The State attempts to avoid removal under the

federal officer statute by exempting from its challenge any of Defendants'

conduct performed under or in relation to federal control:

> This lawsuit does not seek damages related to the federal government or for conduct undertaken pursuant to contracts with the federal government, not does it challenge the creation of custom drug lists for, or on behalf of, a federal agency or federal officer, such as for any
> Federal Employees Health Benefits Act ("FEHBA'") plans, or with the Department of Defense to manage TRICARE-governed

---

[3] The third federal officer removal prong—that a colorable federal defense may be raised—depends upon the effectiveness of the State's alleged disclaimers. The parties essentially agree that if the State successfully disclaimed all conduct performed under or related to federal control, then no colorable federal defense would apply; however, if the State's disclaimer is disregarded, Defendants raise both government contractor immunity and preemption as colorable federal defenses to the State's claims. *See* ECF Nos. 13, 16, 20.

health benefits plans or any other federal plan. Furthermore, this lawsuit does not seek to recover moneys paid by the federal government pursuant to such plans. As such, the Complaint does not seek relief from any PBM Defendant that is available pursuant to any claim(s) involving a federal government agency, federal officer or federal government contracting officer associated with any FEHBA or TRICARE-governed health benefits plan or federal health insurance program; nor pharmacy care services provided to the federal government; nor remedies that would interfere with or otherwise affect any federal plan, including but not limited to any remedies that would interfere with or affect the permitted drug lists, utilization management policies and programs, or administration of any Federal Plan; the uniform administration of the TRICARE program or the provision of healthcare services to U.S. military service members, veterans, and their beneficiaries; or services provided under a contract that requires the exclusive use of any federal government drug list, including the Department of Defense's Uniform Formulary, that specifies the drugs authorized, sets requirements for prior authorization and utilization reviews, and/or assures medical necessity, clinical appropriateness and/or cost- effectiveness, and/or establishes a prescription restriction program for TRICARE federal health insurance program members and/or beneficiaries.

This lawsuit does not contain claims against Defendants that are federal in character related to prescriptions adjudicated or processed under any federal program or federal contract including OptumRx's contract with the Veterans Health Administration or pharmacy care services provided to the federal government, Express Script's contracts with the U.S. Department of Defense, the TRICARE health care program, and other health plans participating in the FEHBP overseen or administered by the federal government; nor does it include requests for relief governed by, or available pursuant to claims associated with any FEHBP or TRICARE-governed health benefits plan; nor claims against Defendants involving beneficiaries under federal healthcare programs or federal plans;

nor federal prescription claims adjudicated or processed for plans controlled or sponsored by federal government agencies or entities or those processed according to a federal drug list design or Medicare Part D plans; nor conduct as a fiscal intermediary on behalf of the federal government; nor conduct governed or managed by a federal officer or federal government contracting offer, or basic governmental tasks fulfilled or carried out by a Defendant on behalf of the federal government; nor determinations as to the appropriateness of restrictions on a TRICARE member's prescriptions, which are to be determined by a federal officer; nor conduct considered to be undertaken by any Defendant as a statutorily authorized alter ego of the federal government; nor any contract that provides and/or requires federal government subjection, guidance, and/or control over a Defendant's performance and/or the prescription drugs included in permitted drug lists. Plaintiff further disclaims any claims regarding: 1) conduct related to prescription claims for federal plans that may or may not have caused an oversupply of prescription opioids or caused or contributed to the harms for which Plaintiff seeks recovery; 2) Express Scripts' pharmacy benefits management or mail order work for the Department of Defense under any TRICARE Contract and pertaining to health plans under FEHBA, including the operation of mail order pharmacies in accordance with contractual guidelines set by the federal government; and 3) OptumRx's work for the Veterans Health Administration and/or the federal government.

ECF No. 1-2, PageID.101-03, ¶ ¶ 108–09.

Defendants argue that the disclaimer advanced by the State is ineffective because "it is not possible to divide their federal and non-federal work to enforce the disclaimer.'" ECF No. 16, PageID.749 (quoting *Puerto Rico*, 119 F.4th at 192); ECF No. 16-2.

The First Circuit's *Puerto Rico* case is instructive here. The court rejected Puerto Rico's claim that its disclaimer nullified federal officer removal because the PBMs' work for federal and non-federal clients was indivisible as alleged by the PBMs. *Puerto Rico*, 119 F. 4th at 191. The First Circuit held that "a valid disclaimer must eliminate any basis for federal officer removal so that, upon remand, there is no possibility that a state court would have to determine whether a defendant acted under a federal officer's authority." *Id*. at 187. When the applicability of the disclaimer turns on whether a defendant's challenged conduct was caused or required by the federal government, the disclaimer is not effective to avoid removal. *Id*.

The *Puerto Rico* court reasoned that these "circular" disclaimers would force defendants to prove in state court that they were acting under the direction of the federal government. *Id*. And any "disclaimer that requires a state court to determine the nexus 'between the charged conduct and federal authority' is not a valid means of precluding removal." *Id*. at 188 (quoting *Willingham v. Morgan*, 395 U.S. 402, 409 (1969)). The court also found that disclaimers disavowing claims based on a defendant's conduct carried out under the color of federal office, but included in a

Page **15** of **23**

complaint which still seeks to recover based on a defendant's official acts, are equally ineffective in foreclosing removal. *Id*. "[C]ourts must determine whether, despite the disclaimer, the facts of the case make it likely that the plaintiff will hold a defendant liable for its official acts for which it possesses a colorable federal defense." *Id*. An affirmative answer to this question renders the disclaimer ineffective. *Id*.

In *Puerto Rico*, the Commonwealth sought recovery from PBMs for unlawfully driving up the price of insulin. Specifically, the Commonwealth alleged that the PBMs' negotiations with drug manufacturers resulted in higher rebates, which in turn, pushed prices for insulin products higher. *Id*. at 181.The PBM defendants asserted in their notice of removal that it did not distinguish between federal and non-federal clients when negotiating for rebates with drug manufacturers. *Id*. In other words, the negotiated rebates were effective across all PBM plans, both federal and non-federal. *Id*. The PBMs premised removal on their theory that the PBM services they provided for federal plans were indivisible from the services provided to private entities, and thus they performed the challenged conduct (the negotiation of rebates with drug manufacturers) on behalf of a federal officer. Recognizing that a removing defendant's theory of the case must

Page **16** of **23**

be credited in evaluating removal,  the court accepted the PBMs assertion that their "work for private clients was indivisible from [their] work for the federal government due to the structure of its rebate negotiations" in deciding that disclaimer was ineffective. *Id*. at 189 (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)).

The *Yost* court agreed with the First Circuit's analysis. *See Yost*, 165 F.4th at 1008-09. It noted a court's obligation to credit the removing PBM defendants' theory of the case for jurisdictional purposes, finding that the alleged indivisibility of their work for private and federal clients required rejecting the state's disclaimer. *Id*. at 1009. It likewise recognized that "[r]elinquishing claims "as they relate to" [federal plans] would allow a state court to decide whether the federal government directed the conduct at issue." *Id*. at 1008-09. When "the parties disagree about whether the liability imposed on the negotiation process necessarily falls on federal conduct arising from a single negotiation…, [the court] accept[s] for jurisdictional purposes that it does." *Id*. at 1009 (citing *Hunt*, 140 F.4th at 199).

The State attempts to distinguish both *Yost* and *Puerto Rico* because the alleged wrongdoing in those cases was the artificial inflation of insulin

costs, rather than the flooding of the opioid market. *See* ECF No. 48, PageID.1204. But this argument focuses on the difference in the injury flowing from challenged conduct rather than the challenged conduct itself. Both the insulin (and other drug price inflation) cases and the opioid cases target the same PBM conduct—the negotiation of rebates and other pricing and supply factors with the drug manufacturers. The *Puerto Rico* court explained the plaintiff's theory of its insulin case as follows:

> *Central* to the Commonwealth's claims are the PBM Defendants' *rebate negotiations*. The Commonwealth alleges that…the PBM Defendants excluded certain drugs from their formularies to increase competition and encourage drug companies to offer higher rebates. The Commonwealth, in other words, accuses the PBM Defendants of effectively using their leverage as formulary holders to sell that formulary space to the highest bidding drug company. To keep up with the rising costs of formulary space, drug manufacturers in turn had to increase the [wholesale acquisition cost] price. Those increased costs, the Commonwealth asserts, were then passed on to the consumers: Because many consumers' out-of-pocket payments for insulin are tied to the WAC price, consumers' out-of-pocket payments increase when the WAC price increases.

119 F.4th at 180 (emphasis added) (internal marks omitted). Similarly, and like the State does in this case, in opioid case *Mississippi v. Optum, Inc.*,

> Mississippi alleged that the PBM defendants *played a key role* in facilitating the oversupply of opioids by colluding with…opioid manufacturers to increase opioid sales. According to Mississippi, the PBM defendants colluded, in part, *by negotiating rebate payments, fees, and other incentives* from drug manufacturers in

exchange for preferential placement of their drugs on PBM formularies.

2025 WL 1622390, at *1 (S.D. Miss. June 9, 2025) (emphasis added) (internal marks omitted). Accordingly, in both insulin and opioid cases, the challenged conduct is the PBMs' negotiation of rebate payments, fees, and other incentives. Whether the challenged conduct results in increased insulin or other drug prices, or the flooded supply of opioids, is not meaningful to the determination of the removability of the action challenging the conduct.

As discussed at length above, the critical factor in determining the removability of this action under *Yost* is whether the State's disclaimer effectively severs the causal nexus between operating under or related to the color of federal office and the challenged conduct.

The State argues that its claims "challenge Defendants' non-federal opioid business practices only, and do[] not challenge opioid rebate negotiations…" ECF No. 48, PageID.1204. The Court rejects this argument for several reasons.

First, the State's assertion that it does not challenge Defendants' opioid rebate negotiations mischaracterizes its own complaint. The State specifically identifies Defendant PBMs' negotiated rebates with opioid

Page **19** of **23**

manufacturers as critical to its allegation that it colluded with manufacturers in oversupplying the opioid market. *See, e.g.*, ECF No. 1-2, PageID.112-13, ¶ ¶ 134-38; PageID.120, ¶ 164.b.;PageID.121, ¶ ¶ 166-67; PageID.128-29, ¶ ¶ 184, 185; PageID.130-33, ¶ ¶ 191-197; PageID.134, ¶ 204.

To the extent the State argues its disclaimer carves out the Defendants' negotiations with drug manufacturers on behalf of federal entities, that position directly conflicts with Defendants' theory of the case: that their single negotiation with drug manufacturers, for the benefit of all clients, federal and private, is indivisible. *See* ECF No. 16-2. *Yost* demands the Court accept Defendants' theory of indivisibility for jurisdictional purposes.165 F.4th at 1009. And if Defendants' theory of the case is accepted, the State's disclaimer is not effective to prevent removal.

By targeting Defendants' rebate negotiations while disclaiming any claim for "conduct governed or managed by a federal officer or federal government contracting offer, or basic governmental tasks fulfilled or carried out by a Defendant on behalf of the federal government," the State necessarily targets what Defendants allege are "acts under" a federal officer's authority. *See* ECF No. 1-2, PageID.102-03, ¶ 109. Defendants assert that they negotiate for rebates with manufacturers for federal and

non-federal plans together; there are no "federal only" negotiations. ECF No. 16-2. And Defendants contend that when they negotiated for rebates during the period relevant to the instant dispute, their negotiations resulted in rebate agreements that covered both types of plans. *Id*.

Accordingly, if Defendants are liable for their conduct in negotiating rebates for private clients and federal plans, then they could be liable for their conduct under the direction of the OPM, DoD, or VHA , regardless of the disclaimer's terms. *See Puerto Rico*, 119 F.4th at 191. Defendants maintain that when they negotiate rebates according to the OPM, DoD, and VHA's contractual demands, they undertake a task that the federal government would otherwise have to perform itself: administering health benefits for federal employees, active-service military members, and veterans. By targeting those negotiations in its lawsuit, the State implicates Defendants' work carried out under federal authority. *See id*.

Second, crediting the State's disclaimer would undercut § 1442(a)(1)'s requirement that federal courts determine whether a defendant acted under a federal officer's authority. The disclaimer disavows relief relating to the federal government's conduct, but Defendants claim they negotiate for federal and non-federal plans in a single negotiation with drug

Page **21** of **23**

manufacturers. Given this alleged singularity, if the State were to recover for how Defendants' rebate negotiations flooded the opioid market, it could potentially recover in state court for Defendants' acts under a federal officer's authority, thereby depriving Defendants of the federal forum to which they were entitled under the statute. *See id.*

Likewise, because a single rebate negotiation may have involved both federal and non-federal plans, even if the State seeks relief on behalf of Michigan residents covered by a private carrier, Defendants may have a colorable federal defense that it acted in compliance with the terms of its federal contracts when conducting negotiations on behalf of the private carrier. Thus, accepting the disclaimer would deny Defendants' right to have a federal court evaluate their "colorable" federal defenses. *See id.*

In sum, for jurisdictional purposes, the Court finds that Defendants satisfy the three-part test for removal by a private party under the statute. The Court accepts Defendants' theory of the case that their federal and non-federal work is indivisible based on the way it negotiates rebates for the federal government and private clients collectively. Finally, the Court holds that the State's alleged disclaimer is not effective and does not warrant remand. The disclaimer did not foreclose Defendants' argument

that they conducted a single rebate negotiation with drug manufacturers for all clients, federal and private, and thereby that they acted under a federal officer and possess colorable federal defenses for that conduct. For this reason, the State's disclaimer did not eliminate the possibility that it could recover for Defendants' official acts, and the disclaimer therefore does not justify remand.

## IV.    Conclusion

For the reasons discussed above, the Court **DENIES** the State's motion to remand (ECF No. 13).

**IT IS SO ORDERED.**

s/ Shalina D. Kumar
SHALINA D. KUMAR
United States District Judge

Dated: March 31, 2026